UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DONALD C. SZAROWICZ,

                Plaintiff,

   v.                                         **DECISION AND ORDER**
                                                   11-CV-277S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.     Plaintiff, Donald C. Szarowicz, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since April 20, 2007, due to left shoulder and neck pain, headaches, and radiculopathy.[1] Plaintiff contends that his impairment has rendered him unable to work. He therefore asserts that he is entitled to payment of disability benefits under the Act.

2.     Plaintiff applied for disability insurance benefits on July 30, 2008. The Social Security Administration ("SSA") initially denied his application. Pursuant to Plaintiff's request, ALJ Robert T. Harvey held an administrative hearing on August 19, 2010, at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on September 8, 2010, issued a decision denying Plaintiff's application for benefits. On January 28, 2011, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on March 29, 2011, challenging Defendant's final decision.[2]

3.     On October 21 and 24, 2011, the Defendant ("Commissioner") and Plaintiff,

---

[1] Radiculopathy is described as "any pathological condition of the nerve roots." Merriam Webster's Medical Desk Dictionary, 599 (1993).

[2] The ALJ's September 8, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

respectively, filed Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 10.) The Commissioner amended his motion on October 24, 2011. (Docket No. 11.) After full briefing, this Court took the motions under advisement without oral argument.

      4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990); Molina v. Barnhart, No. 04 Civ. 3201(GEL), 2005 WL 2035959, at *5 (S.D.N.Y. Aug. 17, 2005) (quoting Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998)). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

      5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from

the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability (R. at 20);[3] (2) Plaintiff has the following "severe" impairments, within the meaning of the Act: left shoulder arthroscopy with extensive debridement of glenohumeral joint; subacromial decompression; excision of subacromial bursa and coracoacromial ligament; anterior acromioplasty; rotator cuff debridement; discogenic cervicval spine and headaches (R. at 20); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 20); (4) Plaintiff has the residual functional capacity ("RFC") to lift/carry/push/pull 20 pounds occasionally and ten pounds frequently, sit for two hours in an eight-hour day and stand/walk for six hours in an eight-hour day, subject to various limitations (R. at 21);[4] and (5) Plaintiff is able to perform his

---

[3] Citations to the underlying administrative record are designated as "R."

[4] Plaintiff has "occasional limitations in bending, climbing, stooping, squatting, and kneeling." (R. at 21.) Plaintiff has "occasional limitations . . . in reaching in all directions with the left upper extremity and [in] the ability to feel with the left upper extremity." (R. at 21.) Plaintiff is "also unable to reach overhead with the left upper extremity, climb ropes, ladders or scaffolds, crawl or work in areas where he would be exposed to temperature extremes." (Id.)

past relevant work as actually performed as a supervisor at Qual-Effic Services and DEK Global Solutions because it does not require the aforementioned activities precluded by his residual functional capacity (R. at 26). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, September 8, 2010. (R. at 26.)

10. Plaintiff advances three challenges to the ALJ's decision. First, he argues that the ALJ erred at step three of the five-step analysis by failing to consider whether his impairment met Listing 1.04A. Second, Plaintiff argues that the ALJ's credibility assessment was improper. Third, Plaintiff argues that the ALJ erred in finding him capable of performing his past relevant work.

11. Plaintiff's first challenge is that the ALJ failed to consider whether his cervical impairment met or medically equaled Listing 1.04A. Plaintiff contends that the five-step sequential analysis should have ended at step three, with a determination that his condition meets the criteria in Listing 1.04A.

12. From this Court's review, it appears that evidence in the record supports Plaintiff's claim that he meets the Listing requirements in 1.04A. But this Court cannot determine whether the ALJ considered this Listing because it is not referenced in his decision. If he did not, the case must be remanded for further consideration. If he did, the case must still be remanded because the ALJ's decision lacks any discussion of 1.04A, leaving this Court unable to assess whether the ALJ's decision is supported by substantial evidence. Accordingly, this Court will remand this case for consideration and determination of whether Plaintiff meets the Listing at 1.04A. See Kovacevic v. Chater, No. 94-CV-600S, 1995 WL 866425, at *8-*9 (W.D.N.Y. Sept. 29, 1995) (requiring explanation when a

plaintiff's symptoms appear to match those of a Listing) (citing Booker v. Heckler, No. 83 Civ. 5300 (RLC), 1984 WL 622, at *3 (S.D.N.Y. July 19, 1984)).

13.     The third step in the sequential analysis requires the ALJ to determine whether a claimant's impairment(s) meet or equal those impairments listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments") (hereinafter "Listings"). 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; see, e.g., Bellamy v. Astrue, No. 08-CV-0628A, 2010 WL 2025489, at *9 (W.D.N.Y. Mar. 30, 2010).

14.     Listing 1.04 requires threshold evidence of a "[d]isorder of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of the nerve root . . . or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Listing 1.04A additionally requires "[e]vidence of nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, and (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . ." § 1.04A[5] (numbering not in original).

15.     Plaintiff cites specific medical evidence supporting his position that his condition satisfies Listing 1.04A. Most notably, Plaintiff relies on medical evidence of nerve root compression from a May 2007 MRI, which would satisfy the Listing. See (R. at 263, 266-77) (MRI reading by Dr. Lawrence Rand shows "disc herniation at the C6-7 level with compression of the right C7 nerve root . . . .").

16.     Plaintiff also submitted evidence that he meets the three additional

---

[5] "[I]f there is involvement of the lower back," Listing 1.04A also requires "[e]vidence of . . . positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A. Based on the record, it appears undisputed that Plaintiff's injury does not involve the lower back, and therefore this Listing requirement does not apply.

6

requirements for Listing 1.04A. First, Plaintiff produced evidence of "neruo-anatomic distribution of pain" in that Dr. Capicotto (a neurosurgeon) noted spinal tenderness at the C5, 6, and 7 cervical discs. (R. at 235.) Plaintiff's orthopedic surgeon, Dr. Grant, noted spinal stiffness and soreness "with associated headaches and bilateral radicular syndrome." (R. at 180.) Second, Plaintiff exhibited "limited cervical spinal range of motion in all directions," (R. at 310), and "very limited" range of motion to the neck, according to Dr. Egnatchik, (R. at 219). Dr. Capicotto also noted limited range of motion in the neck with pain. (R. at 235, 241.) Third, Plaintiff produced evidence of "motor loss and sensory or reflex loss" in that Dr. Egnatchik observed weakness in Plaintiff's left arm, (R. at 218-19), and Dr. Capicotto noted decreased sensation, (R. at 240-43), paresthesias,[6] (R. at 234-36), and brisk reflexes, (R. at 193-94, 234-36).

17.    In response, the Commissioner argues that Plaintiff's condition does not meet the 1.04A Listing requirements, citing medical evidence that contradicts Plaintiff's assertions. The Commissioner maintains that there is no evidence of nerve root compression, and therefore Plaintiff does not satisfy the threshold requirement of Listing 1.04. Specifically, the Commissioner points to an April 10, 2008 MRI that showed no compression on the spinal cord. (R. at 208.) But the Commissioner fails to acknowledge the April 29, 2008 (post-MRI) exam citing Plaintiff's "pain with cervical compression" and possible "cervical pathology," (R. at 263). The Commissioner also cites several sources indicating improved left shoulder range of motion and intact neurovascular status. (R. at 315, 317, 320-32, 343-44.) He also notes that Plaintiff at times exhibited full motor strength and sensation. (R. at 274, 307, 310.)

---

[6] Paresthesia is defined as "a sensation of pricking, tingling, or creeping on the skin having no objective medical cause and usu[ally] being associated with injury or irritation of a sensory nerve or nerve root." Merriam Webster's Medical Desk Dictionary, *supra* note 1, at 518.

18. The Commissioner also cites specific medical records that actually support Plaintiff's position. For example, the Commissioner cites Dr. Braun's 2008 physical exam as evidence of Plaintiff's full motor strength and intact sensation, yet that same exam revealed brisk reflexes, pain, and limited range of motion — symptoms contained in Listing 1.04A. (R. at 193.) The Commissioner also asserts that Plaintiff's cervical radiculopathy was resolving after Plaintiff's surgery, id., yet Dr. Braun actually noted that Plaintiff's left shoulder injury was resolving at this time, not his cervical radiculopathy; on the contrary, Dr. Braun noted his impression of Plaintiff's "cervical radiculopathy, probable disc neck." (Id.)

19. It appears that the ALJ did not consider or resolve this conflicting evidence or analyze the Listing at 1.04A, making it impossible for this Court to determine whether he considered this Listing in the third step.[7] Although it is true that an ALJ is not obligated to specifically address each piece of evidence in his or her decision, Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983), the ALJ is not excused from addressing a key determinative issue with sufficient specificity, Davis v. Astrue, No. 6:09-CV-186 (LEK/GHL), 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010) (citations omitted) (citing, *inter alia*, Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). To be sure, the Second Circuit explicitly requires an ALJ to set forth his or her decision in such a manner so as to "enable [reviewing courts] to decide whether the determination is supported by substantial evidence." Davis, 2010 WL 2545961, at *3 (citing, *inter alia*, Ferraris, 728 F.2d at 587); accord Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) (ALJ's failure to explain or even address his implicit rejection of conflicting probative evidence was error; boilerplate

---

[7] There was also conflicting evidence that Plaintiff might have been disabled at some point in time, even if his condition had improved by the August 2010 hearing or perhaps even the April 2008 MRI. This Court likewise cannot determine whether the ALJ considered this in the third step.

language was insufficient to allow a reviewing court to adequately review the ALJ's decision).

20. It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a Listing is deemed disabled *per se* and eligible to receive benefits. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. It is well settled that "[w]here the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must explain a finding of ineligibility based on the Listings." Kovacevic, 1995 WL 866425, at *8 (citing Booker, 1984 WL 622, at *3); see also Kerr v. Astrue, No. 09-CV-01119 (GLS), 2010 WL 3907121, at *3-*5 (N.D.N.Y. Sept. 7, 2010); Davis, 2010 WL 2545961, at *3-*5.

21. In Davis, for example, the ALJ simply stated that the plaintiff's impairment did not meet or equal a Listing. 2010 WL 2545961, at *3-*5. The court held that it could not conclude that the ALJ's step three determination was proper, because it was unclear which Listings the ALJ considered, and after an independent analysis of conflicting evidence, the court found the "[p]laintiff *may* [have met] Listing 1.04A." Davis, 2010 WL 2545961, at *5 (emphasis added). Where there is significant probative evidence that a claimant meets the criteria for a Listing at step three, the case will be remanded if the court determines that the "[p]laintiff was owed a more substantive discussion of *why* []he did not meet [a particular Listing]." Kerr, 2010 WL 3907121, at *6 (emphasis added) (citations omitted).

22. Here, the ALJ's step three analysis fails to consider Listing 1.04A, and only briefly mentions Listing 1.02. (R. at 20.) Therefore, the analysis is insufficient. Because there is evidence in the record that Plaintiff's medical condition may meet the 1.04A Listing, this case will be remanded for further consideration.

23. Plaintiff also argues, and this Court agrees, that the ALJ did not properly assess his credibility when he found that Plaintiff exaggerated the severity of his pain. (R. at 26.) Plaintiff argues that the ALJ misstated (or misinterpreted) Plaintiff's daily activities, which was dispositive of his decision to discredit Plaintiff's subjective claims of pain and limitations. (R. at 21-22, 26.) Furthermore, Plaintiff argues that the ALJ failed to consider and discuss his significant employment history.

24. "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of Health, Educ. & Welfare, 623 F.2d 217, 219 (2d Cir. 1980)); see also Maggio v. Heckler, 588 F. Supp. 1243, 1246 (W.D.N.Y. 1984); Patterson v. Chater, 978 F. Supp. 514, 519 (S.D.N.Y. 1997); Nelson v. Barnhart, No. 01 Civ. 3671(RLC), 2003 WL 1872711, at *7 (S.D.N.Y. Apr. 10, 2003). This is because a claimant with an established employment history is unlikely to be "feigning disability." Patterson, 978 F. Supp. at 519. Accordingly, in the Second Circuit, it is "contrary to the law and the SSA's rulings" when an ALJ fails to consider work history in a credibility assessment. Pena v. Barnhart, No. 01 Civ. 502 (BSJDF), 2002 WL 31487903, at *13 (S.D.N.Y. Oct. 29, 2002) (quoting Montes-Ruiz v. Chater, 129 F.3d 114 (Table) (2d Cir. 1997)).

25. Here, it appears that Plaintiff has an excellent work history; it is lengthy and continuous. (R. at 105, 107.) Before his work related injury at Schneck's Tree Removal, a position he held for seven years, Plaintiff worked for several years in the automobile industry. (R. at 120.) He held a supervisory position with Delphi for two years, and was a

service manager at the Jim Ball car dealership for at least five years.[8] (Id.) There appear to be no significant breaks in Plaintiff's work history. (R. at 105, 107.) Furthermore, evidence in the record shows Plaintiff has worked steadily throughout his adult life, beginning in the mid-1970s. (Id.) In total, Plaintiff worked continuously for 33 years before his injury. (Id.)

26.     With this type of work history, the ALJ was required to afford "substantial credibility" to Plaintiff's claim that he is unable to work because of his disability or specifically state in his decision why Plaintiff was not credible despite his work history. Rivera, 717 F.2d at 725. But the ALJ neither discussed Plaintiff's work history, nor indicated what weight, if any, he afforded it in determining whether Plaintiff's complaints of pain and physical restrictions were credible.[9]

27.     Failing to mention work history will not, in itself, constitute reversible error when the credibility assessment is based on objective medical evidence of a *lack* of a disability. Johnson v. Astrue, No. 07-CV-0322C, 2009 WL 3491300, at *6-*7 (W.D.N.Y. Oct. 23, 2009) (distinguishing Rivera, 717 F.2d 719). But as discussed above, this case is being remanded to the ALJ for consideration of whether Plaintiff's impairment meets or equals Listing 1.04A. The ALJ shall therefore also reassess Plaintiff's credibility in light of his substantial work history on remand.

28.     Finally, Plaintiff argues that the ALJ erred at step four of his analysis by not resolving conflicts between Plaintiff's RFC and certain job duties in Plaintiff's past relevant

---

[8] The SSA-3368 & SSA-3369 forms require a claimant to provide a work history only for the previous 15 years, and therefore this Court cannot confirm precisely when Plaintiff began working at Jim Ball. See (R. at 118-20, 125-29.)

[9] Beyond noting that Plaintiff has past relevant work experience as a supervisor, (R. at 26), and that he was injured while working as a tree remover, (R. at 22), the ALJ did not discuss Plaintiff's lengthy work history in his decision.

11

work as supervisor at Qual-Effic Services and DEK Global Solutions. The ALJ shall evaluate this argument on remand as well.

29. After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is granted. Defendant's Motion for Judgment on the Pleadings is denied.

IT HEREBY IS ORDERED, that Defendant's Amended Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED and this case is REMANDED for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: July 28, 2012
        Buffalo, New York

                                             /s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                                Chief Judge
                                      United States District Court